IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED MARKETING SOLUTIONS, INC.,  )
                                   )
            Plaintiff,             )
                                   ) CASE NO.  1:09-CV-1392
v.                                 )
                                   )
ANGIE M. FOWLER, *et al.*,         )
                                   )
            Defendants.            )

## MEMORANDUM ORDER

THIS MATTER is before the Court on Plaintiff United
Marketing Solutions, Inc.'s Motion for Entry of Final Judgment
and Other Relief.  (Dkt. No. 117.)  This case concerns
Defendants' breach of a franchise agreement with Plaintiff
United Marketing Solutions, Inc. ("UMS").  In its present
Motion, UMS requests that the Court (1) adjudicate its motion
for attorney's fees, (2) enter final judgment, and (3) dismiss
Defendants' attorney's fees request in connection with
Defendants' Motion to Compel, which determination is on remand
before the Magistrate Judge.

Final judgment has been entered, so there are only two
issues remaining before the Court.  The first issue is whether
the Court should grant UMS' Motion as to the dismissal of
Defendant's request for attorney's fees when Defendants took
two-and-a-half months to file the required documents in support

of their request for attorney's fees after this Court remanded the matter to the Magistrate Judge to reconsider the reasonableness of those fees.  The second issue is whether UMS is entitled to the full amount of attorney's fees it has requested when UMS (1) only prevailed on three of its five claims in this action and (2) was awarded damages on one of those claims.

The Court denies in part and grants in part Plaintiff's Motion.  The Court denies Plaintiff's Motion as to its request to dismiss Defendants' claim for attorney's fees and costs in connection with Defendants' Motion to Compel because Defendants filed a Memorandum in Support of Defendants' Motion to Compel on Remand (Dkt. No. 121), supplementing their request for attorney's fees.  The Court grants Plaintiff's Motion as to its request to adjudicate UMS' pending attorney's fees claim.  The Court holds that UMS is entitled to the full amount of requested attorney's fees because (1) UMS has provided sufficient evidence supporting the reasonableness of its requested rate, (2) UMS has demonstrated that the hours billed all pertain to its successful claims, and (3) the requested amount is reasonable pursuant to the factors set forth in *Johnson v. Ga. Highway Express, Inc.*,

2

488 F.2d 714 (5th Cir. 1974), *abrogated by Blanchard v.*
*Bergeron*, 489 U.S. 87 (1989).[1]

## I.   BACKGROUND

This case concerns Defendants-Franchisees Angie and Timothy
Fowler's breach of a franchise agreement with Plaintiff-
Franchisor UMS relating to the distribution of mass-mailed
business advertising coupons to residential homes.  Plaintiff
UMS owned a coupon and advertising system that mailed coupons to
residential homes.  (First Am. Compl. ¶ 4, Dkt. No. 33.)  In
June 2002, UMS and the Fowlers entered into an Area Franchise
License Agreement ("Agreement") pursuant to which the Fowlers
became franchisees for UMS' coupon and advertising system for
certain territories in North Carolina.  (Agreement at 28; First
Am. Compl. ¶ 4.)  As part of this Agreement, UMS was obligated
to provide printing services to the Fowlers.  (Blumstein
Certification Ex. 2, at 2, Dkt. No. 22.)

---

[1] In *Blanchard v. Bergeron*, 489 U.S. 87 (1989), the Supreme Court
reversed a decision of the United States Court of Appeals for
the Fifth Circuit that relied upon a statement in *Johnson* in
ruling that a contingency-fee arrangement serves as a cap on the
amount of attorney's fee to be awarded in a case brought under
42 U.S.C. § 1988.  The Supreme Court explained that the *Johnson*
contingency-fee factor is simply a factor in the determination
of reasonableness and does not impose an automatic ceiling on an
award of attorney's fees.  *Blanchard*, 489 U.S. at 93.  Although
*Johnson* was abrogated as to the weight given to fee
arrangements, the *Johnson* factors are still relevant to the
overall determination of reasonableness, and the Court will look
thereto in the discussion below.

Paragraph XIII, Section 1 of the Agreement contained a

"Non-Competition; Non-Solicitation" clause.   Section (a) of this

clause stated:

> During the term of the License, the Area Franchisee
> shall not, without United's prior written consent . .
> . own, maintain, engage in, have any interest in or
> perform and service for any other business which
> offers direct mail advertising products . . . or
> employ . . . any person who, within the preceding six
> (6) months, has been an employee, agent or independent
> contractor of United . . . .

(Agreement at 14.)   Section (c) of the Non-Competition; Non-

Solicitation Clause stated:

> For a period of twenty four (24) months after
> termination . . . of the License, regardless of cause,
> the Area Franchisee shall not, without United's prior
> written consent, either directly or indirectly, . . .
> (i) employ, use as an agent or independent contractor,
> or seek to employ or use as an agent or independent
> contractor, any person who, within the preceding six
> (6) months, has been an employee, agent, or
> independent contractor of United or any UNITED
> franchisee, or (ii) solicit the purchase of any form
> of advertising by any business, which, within the
> preceding twenty-four (24) months, has been a client
> of United or any UNITED franchisee.

(Agreement at 14.)

Finally, Paragraph XVI of the Agreement provided certain

conditions and procedures for termination of the Agreement:

> The License may be terminated at any time by the
> Area Franchisee upon one hundred twenty (120) days
> written notice to United, provided that the Area
> Franchisee complies with subparts (k)-(n) of this
> paragraph, and executes a general release under seal .
> . . of any and all claims against United . . . .

4

(Agreement at 19.)   Subparts (k)-(n) outlined the requirements with which the Fowlers had to comply upon termination: (1) pay any sums due under the Agreement; (2) cease using UMS' system or proprietary asset; (3) return any materials UMS provided to them, and (4) refrain from doing anything that would indicate a franchise relationship with UMS.  (Agreement at 19-20.)

In the spring of 2009, the Fowlers sent UMS a notice, stating that they were terminating the Agreement.  (First Am. Compl. ¶ 7.)  Soon after, the Fowlers opened a business similar to their UMS franchise and employed several people who formerly worked for UMS.  (Tr. at 6, Dkt. No. 115.)

On November 3, 2009, UMS filed its Complaint in the Circuit Court of Fairfax County, Virginia, which was subsequently removed to this Court and then amended.  (Tr. at 6; Notice Removal, Dkt. No. 1.)  In its First Amended Complaint, UMS asserted a breach of contract claim, alleging that the Fowlers (1) failed to satisfy the termination conditions set forth in the Agreement, (2) violated the non-competition and non-solicitation clauses of the Agreement, and (3) failed to pay UMS the full amount due for its printing services.  (First Am. Compl. ¶¶ 8-10.)

In its First Amended Complaint, UMS requested that the Court enjoin the Fowlers from operating their business and from employing former UMS employees. (First Am. Compl. ¶ 19.)

5

Additionally, UMS sought damages "in an amount not less than" $500,000.  (First Am. Compl. ¶ 19.)  UMS claimed that it had suffered two types of damages:  (1) lost profits amounting to $743,204.00 from the alleged breach and (2) unpaid printing services amounting to $33,923.92.  (Blumstein Certification at 3.)

On June 7, 2010, Defendants filed a Motion to Compel discovery under Federal Rule of Civil Procedure 37, seeking UMS' supplemental initial disclosure, responses to interrogatories, and production of documents all regarding UMS' allegations that it suffered $743,204 and $33,923.92 in damages for lost profits and printing services, respectively.  (Mem. Supp. Defs.' Mot. Compel Ex. 1, at 1, Dkt. No. 22.)  The Magistrate Judge granted the motion and awarded Defendants attorney's fees incurred in connection with the motion.  (Order, June 18, 2010, Dkt. No. 28; Order, July 16, 2010, Dkt. No. 39.)

On July 26th, 2010, Plaintiff UMS objected to the Magistrate Judge's ruling, arguing, *inter alia*, that the rates the lawyers charged to prepare the Motion to Compel were not reasonable. (Dkt. No. 46.)  Upon review of the Magistrate Judge's ruling, the Court sustained Plaintiff's objection and reversed the Magistrate Judge's ruling as clearly erroneous and contrary to law because Defendants failed to provide sufficient evidence to establish the reasonableness of their requested

attorney's fees.  (Mem. Order, Mar. 2, 2011, Dkt. No. 114.)  The
Court's Order remanding Defendants' request for attorney's fees
provided no timeframe or deadline by which Defendants must
supplement the evidence in support of their request.  (Mem.
Order at 10-11, Mar. 2, 2011.)

On September 1, 2010, the Parties filed cross-motions for
summary judgment.  (Dkt. Nos. 69, 71.)  UMS sought summary
judgment on the issues of liability for breach of contract and
lost profits damages, while the Fowlers sought summary judgment
on the issues of equitable relief and lost profits damages.
(Order, Oct. 20, 2010, Dkt. No. 97.)  On October 20, 2010, the
Court granted UMS' Motion for Summary Judgment on the issue of
liability.  (*Id.*)  The Court denied the Parties' motions for
summary judgment as to the issue of lost profits damages but
granted Defendants' Motion for Summary Judgment on the issue of
equitable relief.  (*Id.*)

The Court held a nonjury trial on the issue of damages.
(J., Dec. 22, 2010, Dkt. No. 106.)  The Court awarded UMS
damages in the amount of $23,875.92 for the total amount of
unpaid invoices for (1) UMS' printing services and (2) the
chargeback of financial incentives that UMS advanced to the
Fowlers.  (J.)

On May 12, 2011, UMS filed its Motion for Entry of Final
Judgment and Other Relief, asking the Court to (1) dismiss

7

Defendants' attorney's fees request "for failure to prosecute" because Defendants failed to file the requisite documentation in support of their request for attorney's fees for two-and-a-half months; and (2) adjudicate UMS' pending attorney's fees claim. (Dkt. No. 117, 118.)  On May 24th, 2011, Defendants filed both an Opposition to Plaintiff's Motion and specific evidence in support of their request for attorney's fees.  (Dkt. Nos. 121, 122.)  Plaintiff's Motion is now before the Court for consideration.

## II.   STANDARD OF REVIEW

A. Dismissal for Failure to Prosecute

Federal Rule of Civil Procedure 41(b) states that "if the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  It is a matter for a court's discretion to dismiss actions under 41(b).  *Claitt v. Newcomb*, 138 F.R.D. 72, 75 (E.D. Va. 1990).  Courts should exercise restraint and caution when considering dismissal.  *Zaczek v. Fauquier Cnty.*, 764 F. Supp. 1071, 1077 (E.D. Va. 1991), *aff'd*, 16 F.3d 414 (4th Cir. 1993).  The district court should consider four factors in determining whether dismissal for failure to prosecute is appropriate: (1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused to the defendant, (3) the existence of "drawn

8

out history of deliberately proceeding in a dilatory fashion,"

and (4) the existence of sanctions less drastic than dismissal.

*Id.*

## B. Attorney's Fees

To determine the appropriate amount of attorney's fees, "a

court must first determine a lodestar figure by multiplying the

number of reasonable hours expended times a reasonable rate."

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th

Cir. 2009) (citing *Grissom v. Mills Corp.*, 549 F.3d 313, 320

(4th Cir. 2008)).  In determining the reasonableness of the

number of hours and rate, the district court should be guided by

the following twelve "*Johnson* factors":

> (1) The time and labor expended; (2) the novelty
> and difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the
> outset of the litigation; (7) the time limitations
> imposed by the client or circumstances; (8) the amount
> in controversy and the results obtained; (9) the
> experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and
> length of the professional relationship between
> attorney and client; and (12) attorney's fees awards
> in similar cases.

*Robinson*, 560 F.3d at 243-44 (citing *Barber v. Kimbrell's Inc.*,

577 F.2d 216, 226 n.28 (4th Cir. 1978) for its adoption of the

twelve factors set forth in *Johnson v. Ga. Highway Express,*

*Inc.*, 488 F.2d 714 (5th Cir. 1974)).

9

If the lodestar figure is unreasonably high or unreasonably low, the district court can adjust the fee in accordance with the *Johnson* factors.   *Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 881 F. Supp. 1021, 1025 (E.D. Va. 1994).

### III. ANALYSIS

### A. Plaintiff's Motion to Dismiss Defendants' Attorney's Fees Request for Failure to Prosecute

The Court denies UMS' Motion seeking dismissal of Defendants' request for attorney's fees because Defendants (1) have not violated the Court's Order, as there was no deadline provided, (2) cited valid reasons for their delay, and (3) communicated with the Court and have since filed their request.

A court may dismiss an action "if the plaintiff fails . . . to comply with . . . a court order." Fed. R. Civ. P. 41(b).   A district court should consider four factors in determining whether dismissal for failure to prosecute is appropriate: (1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused to the defendant, (3) the existence of "drawn out history of deliberately proceeding in a dilatory fashion," and (4) the existence of sanctions less drastic than dismissal.   *Zaczek v. Fauquier Cnty.*, 764 F. Supp. 1071, 1077 (E.D. Va. 1991), *aff'd*, 16 F.3d 414 (4th Cir. 1993).

Here, denial of UMS' request to dismiss Defendants' request for attorney's fees is appropriate for three reasons.   First,

Defendants have not violated the Court's Order because the Order did not provide a specific deadline by which Defendants needed to supplement its materials in support of its request for attorney's fees.  Unlike in *Ballard v. Carlson*, 882 F.2d 93 (4th Cir. 1989) upon which Plaintiff relies, where a district court dismissed an action because the plaintiff did not heed a magistrate judge's explicit warning about timeliness, here, the Court did not threaten dismissal, provide a warning about timeliness, or set forth a deadline.  Thus, the timeliness of Defendants' supplementation is not in violation of the Court's Order.

Second, the Court finds that Defendants offered reasonable excuses for their delay, citing difficulty obtaining affidavits of other local attorneys familiar with their expertise. Moreover, there is no question that Defendants are entitled to attorney's fees, and the only question that remains is the amount that should be awarded.  Dismissing the entire request would be too draconian under the circumstances.

Finally, Defendants acted responsibly because (1) they communicated with the Court to ask for a deadline,[2] and (2) on May 24, 2011, they filed the requisite evidence in support of

---

[2] In Defendants' Opposition, Defendants stated that the Fowlers' counsel contacted the Court and was told on May 11, 2011 that they had a "few weeks" to submit their evidence.  Defs.' Corrected Mem. Opp'n Pl.'s Mot. 2, Dkt. No. 123.

the reasonableness of their requested attorney's fees in
compliance with this Court's March 2, 2011 Order.  For these
reasons, the Court denies Plaintiff's request to dismiss
Defendants' request for attorney's fees in connection with their
Motion to Compel.

## B. Awarding UMS' attorney's fees

UMS is entitled to $87,891.00[3] in attorney's fees because
(1) UMS is entitled to fees under the Agreement; (2) UMS has
submitted reasonable rates for the fees; (3) UMS has provided a
reasonable number of hours spent on its successful claims; and
(4) the award does not have to be adjusted through examination
of the *Johnson* factors because the Court does not consider the
award unreasonably high or low.

---

[3]  The Court will use the $87,891.00 amount from Plaintiff's
amended request for attorney's fees because the Court finds that
Defendants have not waived their right to challenge the
reasonableness of Plaintiff's attorney's fees.  At the time the
billing records were filed in August 2010, the parties were
unable to ascertain the reasonable number of hours requested
because neither party knew which claims would be successful in
the action. Had Defendants objected to Plaintiff's billing
records then, the Court would not have been able to definitively
rule on the objection, especially without the "specific
evidence" (e.g. affidavits from local attorneys) required by
*Robinson*.   For these reasons, the Court finds that Defendants
may challenge the reasonableness of the award. Therefore, the
Court considers Plaintiff's amended request from Plaintiff's
Reply in Support of Motion for Attorney's Fees and Costs.

1. <u>UMS is Entitled to Reasonable Attorney's Fees for its Claim</u>

The Court finds that UMS is entitled to reasonable attorney's fees because the Agreement expressly provides for reasonable attorney's fees under the present circumstances.

In diversity actions, state law is applied to determine attorney's fees. *Sec. Ins. Co. of Hartford v. Campbell Schneider & Assocs., LLC*, 481 F. Supp. 2d 496, 499 (D.S.C. 2007). Paragraph XIX of the Agreement states that the Agreement "shall be construed and governed by the laws of the Commonwealth of Virginia." (Agreement at 21.) Virginia courts have followed the general rule that a court may only award attorney's fees to the prevailing party if a statute or contract entitles a party to attorney's fees. *Russell Cnty. Dep't of Soc. Servs. v. O'Quinn*, 259 Va. 139, 142 (2000) (citation omitted).

Here, UMS is entitled to attorney's fees because the Agreement provides for attorney's fees, and, under Virginia law, a Court may award attorney's fees if a contract entitles a party to such an award. The Agreement, at Paragraph XX, states: "In the event United engages an attorney to enforce any provision . . . United shall be entitled to recover from Area Franchisee and Area Franchisee shall be liable to United for all costs of such engagement, including court costs . . . and reasonable attorney's fees and expenses." (Agreement at 21, Dkt. No. 33.) First, UMS' documents indicate that it has engaged an attorney

13

in this lawsuit.  Second, UMS prevailed on its claims for breach

of contract for nonpayment of invoices, violation of non-

competition and non-solicitation provisions of the Agreement,

and wrongful termination without notice.  Moreover, UMS

recovered damages on its unpaid invoices claim.  Therefore, UMS

is entitled to recover reasonable attorney's fees under the

Agreement.

2. UMS has Submitted Reasonable Rates for the Fees

The Court holds that UMS has established a prima facie case

that the requested rates for three attorneys and one legal

assistant are reasonable because Plaintiff has supported its

asserted rates with sufficient evidence from the local market.

The requesting party must establish a prima facie case that

the fees requested are reasonable.  *Robinson*, 560 F.3d at 244.

The attorneys for the requesting party must submit affidavits

and "satisfactory specific evidence of the prevailing market

rates in the relevant community for the type of work for which

he seeks an award."  *Id.*  In determining the "market rate," the

district court should consider the rate attorneys in the

relevant community earn "from paying clients for similar

services in similar circumstances."  *Id.* (quoting *Depaoli v.

Vacation Sales Assocs., LLC*, 489 F.3d 615, 622 (4th Cir. 2007)).

Sufficient specific evidence may take the form of affidavits

from local lawyers familiar with the party's attorneys and the

type of work in the community. *Id.* at 245.  The market rate
should guide the district court's inquiry as to whether the
requested rate is reasonable.  *Id.* at 244.

Here, UMS has established the reasonableness of its
attorneys' rates by submitting evidence as to their own rates in
the form of (1) their billing records for this action and (2) an
affidavit from one of the attorneys for UMS.[4]  (*See* Pl.'s Reply
Exs. A, C, Dkt. No. 111.)  UMS also proffered sufficient
evidence of the prevailing market rate by providing an affidavit
from another attorney in the relevant community, which, in this
case, is Northern Virginia.  (Pl.'s Reply Ex. B.)  Specifically,
Plaintiff provided the Declaration of Robert C. Gill, a member
of the bar of the United States District Court for the Eastern
District of Virginia, who has practiced commercial litigation in
Northern Virginia for twenty-five years and regularly reviews
attorney's fee invoices.  (*Id.*)  The Court finds these documents
to be satisfactory in establishing the reasonableness of UMS'
requested rate because (1) local attorney Robert Gill's
affidavit demonstrates his knowledge of and experience with
attorney fee rates for similar services in Northern Virginia,
and (2) the documents thoroughly illustrate the rates of

---

[4] John Patrick Sherry's Declaration provided the following hourly
rates: $260/hour through May 31, 2010 and $275/hour thereafter
for John Patrick Sherry;  $365/hour for Edward W. Cameron;
$215/hour for Matthew L. Frisbee;  and $150/hour for Imelda
Horowitz.  (Sherry Decl. 2-3.)

Plaintiff's counsel.  Based on this evidence, UMS has
sufficiently demonstrated that its requested rates are
reasonable according to the "prevailing market value."

### 3. UMS has Provided a Reasonable Number of Hours Spent on its Successful Claim

The Court holds that the 329.2 hours spent on this matter
are reasonable because UMS' attorneys spent 329.2 hours on its
successful claim or tasks related to it.

When the party requesting attorney's fees has prevailed on
some claims but not others, the district court should eliminate
hours spent on unsuccessful claims and only award the party for
work "expended in pursuit of" the successful claim.  *Hensley v.
Eckerhart*, 461 U.S. 424, 435 (1983).  However, the district
court should not subtract hours spent on unsuccessful claims
that are related to the successful claims.  *Id.*  When successful
and unsuccessful claims are related, "[m]uch of counsel's time
will be devoted generally to the litigation as a whole, making
it difficult to divide the hours expended on a claim-by-claim
basis."  *Id.*  This occurs when separate claims contain a "common
core of facts."  *Id.*

Here, all claims in this action were unified by a common
core of facts pertaining to the Fowlers' termination of, and
failure to comply with, the Agreement.  The Court determined on
summary judgment that UMS prevailed as to liability, and the

16

issues Defendants attempted to isolate as separate "claims" are really different methods of establishing damages flowing from the one claim for breach of contract involving breaches of the non-competition and non-solicitation provisions and the failure to pay invoices.  Even though UMS did not prevail on all forms of damages, all of the different bases for demanding equitable relief revolved around the common core of facts related to the breach of contract.  The hours spent on UMS' "successful claims" are thus difficult to isolate.

UMS has submitted to the Court a comprehensive billing record for the entire course of the litigation.  (Pl.'s Reply Ex. A.)  This record provides the time and expenses related to UMS' breach of contract claim in this action.  UMS has cautiously attempted to omit those hours spent seeking equitable relief.  The Court finds that, with the billing records, UMS has provided the best representation of its hours spent working in pursuit of its breach of contract claim, and, therefore, the amount of hours is reasonable.

4. The Award Does Not Have to be Adjusted Through Examination
of the *Johnson* Factors Because the Court Does Not Consider
the Award Unreasonably High or Low

The Court holds that the lodestar figure of $87,891.00 does not need to be decreased or increased because it is not unreasonably high or low.

In determining the reasonableness of the number of hours and rate, the district court should be guided by the following twelve "*Johnson* factors":

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (citations omitted) (listing the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). *See generally Johnson*, 488 F.2d at 717-720 (discussing how each factor should be applied when considering the reasonableness of attorney's fees), *abrogated by Blanchard v. Bergerson*, 489 U.S. 87 (1989) (holding that the *Johnson* factor requiring consideration of a fee arrangement is but one factor to consider in the reasonableness determination, and the existence of a contingency-fee arrangement does not serve as a ceiling to fees under 42 U.S.C. § 1988).

i.    Time and Labor Expended

The first factor weighs in favor of the requested award's reasonableness because Plaintiff has demonstrated that the award amount is reasonable in light of the time and labor expended.

The district court should weigh the hours claims against the judge's "own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717.  If there are multiple attorneys, "the possibility of duplication of effort . . . should be scrutinized." *Id.*

Here, Plaintiff has demonstrated that the award amount is reasonable in light of the time and labor expended by submitting sufficient evidence documenting its hours spent litigating its successful breach of contract claim.  Upon reviewing the billing records, this Court finds that the hours spent on the claim were reasonable because (1) UMS' counsel spent time on tasks appropriately performed by attorneys, and (2) among the attorneys working on the claim, tasks were not duplicative.

The Court rejects Defendants' assertion that UMS spent "unnecessary" time on its unsuccessful claims because they were "meritless" and "should never have been brought" (Defs.' Mem. Opp'n Pl.'s Mot. 7-10, Dkt. No. 110) because UMS has subtracted hours spent on unsuccessful portions of the litigation. Further, the Court rejects Defendants' position that UMS spent too much time on its unpaid invoices claim by refusing to

19

fulfill Defendants' discovery request concerning damages, resulting in time spent disputing the request.  (Defs.' Mem at 10.)  Defendants provide no evidence aside from sheer speculation to support their suggestion that UMS purposefully wasted time during discovery in order to obtain exorbitant attorney's fees.  Accordingly, Plaintiff has demonstrated that the award amount is reasonable in light of the time and labor expended.

### ii.    Novelty and Difficulty of the Questions Raised

The second factor does not weigh in favor or against the requested award's reasonableness because the issues were not novel and were of average difficulty.

Attorneys are required to invest more time and effort for cases of first impression, and they "should be appropriately compensated for accepting the challenge." *Johnson*, 488 F.2d at 718.  Breach of contract claims are not particularly novel or difficult.  *See Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assocs., LLC*, 699 F. Supp. 2d 766, 770 (E.D. Va. 2009).

Here, the breach of contract claim involving issues of unpaid invoices, competition, and wrongful termination did not involve especially novel issues.  Moreover, the issues were of average difficulty, requiring attorneys to merely identify the breach and determine the appropriate measure of damages.

Therefore, this factor does not weigh in favor or against the requested award's reasonableness.

### iii.     Skill Required to Properly Perform the Legal Services Rendered

The third factor weighs in favor of the requested award's reasonableness based on the skill demonstrated and preparation put into the motions, oral arguments, discovery disputes, and trial involved in this case.

When considering the reasonableness of an attorney's fees award, "[t]he trial judge should closely observe the attorney[s]' work product, . . . preparation, and general ability before the court." *Johnson*, 488 F.2d at 718.

The Court finds that the award is reasonable considering the skill required to properly perform the services rendered because UMS' filings demonstrate the legal expertise and ability of its counsel. Mr. John Patrick Sherry, serving as counsel for UMS, has been practicing law in the Washington Metropolitan Area for nearly ten years, and he is founding partner of the law firm representing Plaintiff in this action, Cameron/McEvoy, PLLC. (Pl.'s Reply Ex. C at 2.)  Mr. Edward Cameron, another attorney representing UMS, has had 23 years of commercial litigation experience.  (*Id.*)  With the quality of their briefing, argument, and other presentations throughout this litigation, including summary judgment proceedings and a trial, Plaintiff's

counsel has demonstrated the expertise and skill that facilitated the success of Plaintiff's claims.  The Court holds that this factor weighs in favor of the requested award's reasonableness.

      iv.     <u>Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case</u>

The fourth factor weighs in favor of the requested award's reasonableness because the time spent on this case could have been used on other matters.

The court should consider "the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718.

Here, the Court acknowledges that Plaintiff's attorneys could have spent time on other cases during the hours they spent litigating UMS' case.  Had the case only taken a nominal amount of time to resolve, this factor would weigh against the reasonableness of the requested amount.  However, UMS' attorneys spent 329.2 hours litigating this case, which is a significant amount of time that counsel could have used for other matters.  Accordingly, this factor supports the reasonableness of UMS' requested attorney's fees amount.

v.     The Customary Fee for Like Work

The fifth factor weighs in favor of the requested award's reasonableness because Plaintiff has demonstrated that the award amount is reasonable in light of the customary fee for similar work in Northern Virginia.

The court should consider "[t]he customary fee for similar work in the community," remembering "that various types of legal work command differing scales of compensation." *Johnson*, 488 F.2d at 718.  Attorneys may demonstrate that their fees are reasonable by "establish[ing] a market rate 'through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases.'" *Nihigian v. Juno-Loudoun, LLC*, No. 1:09cv725, 2010 WL 4623895, at *10 (E.D. Va. Nov. 5, 2010) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)).

Here, drawing on the discussion above, in considering the fifth *Johnson* factor, the Court finds the requested fee award of $87,891.00 to represent the customary fee for like work.  The compilation of UMS' invoices and the affidavit that UMS provided illustrating the reasonable market rate for attorneys in the relevant Northern Virginia community with similar experience and skill support the reasonableness of the fee award requested. (Pl.'s Reply Exs. A, B, C.)  Hence, this factor weighs in favor of the reasonableness of UMS' requested attorney's fees amount.

vi.    Attorneys' Expectations at the Outset of the
       Litigation

The sixth factor weighs neither in favor nor against the
requested award's reasonableness because UMS' attorneys did not
have contingent fee arrangements and there is no other
indication as to Plaintiff's expectations.  The presence of a
pre-existing fee agreement is another factor that may aid in
determining reasonableness.  *Blanchard v. Bergeron*, 489 U.S. 87,
93 (1989). Specifically, "[t]he fee quoted to the client or the
percentage of the recovery agreed to is helpful in demonstrating
attorney's fee expectations when he accepted the case."  *Id.*

Here, the attorneys' expectations at the outset of the
litigation weigh neither in favor nor against the requested
award's reasonableness because UMS' attorneys did not have any
fixed or contingency fee arrangements with UMS, so there is no
indication as to counsel's expectations.  (*See* Pl.'s Reply Exs.
A, B, C.) Therefore, their expectations for their fees were the
hourly rates they agreed to with UMS multiplied by the number of
hours they spent on successful claims.  In the absence of a set
fee arrangement, the Court does not have to consider any
discrepancy between the expected and earned amounts in assessing
the reasonableness of the attorneys' requested award.
Therefore, this factor weights neither in favor nor against the
reasonableness of the requested award.

24

<pre>     vii.      Time Limitations Imposed by the Client or the
               Circumstances</pre>

The seventh factor weighs neither in favor nor against the
requested award's reasonableness because there were no abnormal
time constraints throughout the litigation.

Attorneys' other legal work is delayed when priority work
arises. *Johnson*, 488 F.2d at 718.  The Court should consider
any abnormal time constraints, particularly those imposed on new
counsel, who are brought in to handle appeals or other late-
stage matters. *Id.*; *see Quantum Sys.*, 2009 WL 3423848, at *6.

Here, the Court finds no evidence that UMS' attorneys were
under abnormal time limitations. Therefore, this factor does not
weigh in favor or against the requested award's reasonableness.

<pre>     viii.     The Amount in Controversy and the Results
               Obtained</pre>

The eighth factor weighs in favor of UMS' requested award's
reasonableness because UMS experienced moderate success in this
matter.

Examining the amount in controversy and the results
obtained is an inquiry into the amount of damages awarded and
"the degree of success enjoyed by the plaintiff." *City of
Aiken*, 278 F.3d at 337.

While UMS ultimately recovered an award of only $23,875.92
from its unpaid invoices claim, UMS enjoyed a moderate degree of
success in the case as a whole because it prevailed on the issue

of liability.  Even though Plaintiff did not prevail on its
requests for equitable relief or measure of damages associated
with Defendants' breach, the Court will not decrease the award
amount in light of this factor because the damages award coupled
with the judgment of liability demonstrate that UMS experienced
moderate success in this action.  Therefore, this factor weighs
in favor of the requested award's reasonableness.

> ix.     Experience, Reputation, and Ability of the
>         Attorneys

The ninth factor weighs in favor of UMS' requested
attorney's fees award because UMS' attorneys' fees correspond to
their experience and reputation. In considering this factor, a
court should note that "more experienced attorneys" should
receive larger compensation than less-experienced attorneys.
*Johnson*, 488 F.2d at 718.

Here, the Court holds that this factor weighs in favor of
the fee award's reasonableness because UMS' attorneys' fees
correspond to their experience and reputation.  As mentioned
above, Mr. Sherry, serving as counsel for UMS, has practiced law
in the Washington Metropolitan Area for nearly ten years, and he
is founding partner of Cameron/McEvoy, PLLC.  (Pl.'s Reply Ex. C
at 2.)  UMS' second attorney, Mr. Cameron, has 23 years of
commercial litigation experience.  (*Id.*)  Thus, Mr. Cameron's
fee is appropriately larger than Mr. Sherry's because he has

more years of commercial litigation experience.  Similarly, Mr. Frisbee's rate is lower than Mr. Sherry's, as he has had only four years of commercial litigation experience.   Moreover, the quality of the attorneys' presentations throughout this litigation demonstrates the expertise and skill that facilitated the success of UMS' claim.  Therefore, the Court holds that UMS' attorneys have relatively appropriate fees for their experience, and, thus, this factor weighs in favor of the requested award amount.

> x.    The Undesirability of the Case Within the Legal
>        Community in Which the Suit Arose

The tenth factor does not weigh in favor or against the reasonableness of UMS' request because there is no indication that this case was undesirable in the Northern Virginia legal community.

This tenth factor is meant to require consideration of types of cases that are not well received by the surrounding community or an attorney's contemporaries.  *Johnson*, 488 F.2d at 718.  An example of this type of case is a civil rights or discrimination case in a community where advancement of rights for certain people is not well received.  *Id.*  When considering this factor, a Court is able to take into account the economic harm that may befall an attorney's practice as a result of championing a worthy yet unpopular cause.  *Id.*

27

Because the Court finds no indication that the legal community considered the present case undesirable, the Court does not view this factor as warranting a decrease in the award amount.  Accordingly, this factor does not weigh against the reasonableness of the requested fee award.

      xi.      <u>Nature and Length of the Professional</u>
<u>Relationship Between Attorney and Client</u>

The eleventh factor does not weigh in favor or against the reasonableness of the requested fee award because there is no indication of a fee rate adjustment due to the relationship between UMS and its attorneys.  This factor allows the Court to consider any variances in fee rate that an attorney may make due to a long-standing relationship with a client.  *Johnson*, 488 F.2d at 719.

The Court does not have evidence of the relationship between UMS and its counsel in this action.  Further, there is no indication from any of the briefs or supporting documents that UMS' counsel altered its standard fee rates specifically for UMS in this litigation.  Therefore, the Court holds that this factor does not weigh in favor or against the reasonableness of UMS' requested fees.

      xii.      <u>Attorney's Fees Awards in Similar Cases</u>

The twelfth factors weighs in favor of UMS' requested award because Plaintiff has demonstrated that its requested award is

consistent with award amounts in other commercial breach of contract cases.  The reasonableness of an attorney's fees award may be "considered in the light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719.  Based on the examination of the rate and hours conducted above, the Court finds that this factor weighs in favor of the reasonableness of UMS' requested award.

After examining these twelve factors, the Court finds that Plaintiff's requested $87,891.00 fee award should not be increased or decreased because it is not unreasonably high or low.

## C. Costs

Finally, the Court finds that the Plaintiff is entitled to $204.00 for costs because (1) Paragraph XX of the Agreement states that Defendants are liable for "all cost of . . . engagement [of an attorney], including court costs . . . " (Agreement at 21), and (2) the documentation Plaintiff submitted establishes that Plaintiff paid $204.00 to the Clerk of the Court in filing fees.

## IV.   CONCLUSION

For the foregoing reasons, Defendants are liable for $87,891.00 in attorneys' fees and $204.00 in costs to Plaintiff UMS.  Accordingly, it is hereby

29

ORDERED that Plaintiff's Motion is DENIED in part and GRANTED in part.

The Court DENIES Plaintiff's Motion as to its request to dismiss Defendants' request for attorney's fees and costs in connection with Defendants' Motion to Compel. The Court GRANTS Plaintiff's Motion as to its requests to (1) adjudicate UMS' pending attorney's fees claim and (2) proceed forward with entry of a final judgment, which has been entered by way of a separate Judgment Order in accordance with Federal Rule of Civil Procedure 58. It is further

ORDERED that Defendants pay Plaintiff $87,891.00 in attorneys' fees and $204.00 in costs.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this <u>24th</u> day of August, 2011.

_____/s/_____

Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
08/24/2011